Case No. 24-3151, United States of America v. Garrick D. Richardson, at-balance. Courtney Millian, for the at-balance. Mr. Glasser, for the appellate. Good morning, Ms. Millian. Whenever you're ready. Good morning, your honors, and may it please the Court. Courtney Millian, on behalf of Mr. Richardson, I'd like to reserve 3 minutes for rebuttal. 18 U.S.C. 922 G-1 disarms Mr. Richardson based on his 2 prior carrying a pistol without a license convictions. Carrying a pistol without a license is not a crime, much less a felony, in most states in the Union. Notwithstanding this fact, the government claims he can be disarmed consistent with the Second Amendment under 922 G-1. It is wrong. I'd like to focus my argument on Mr. Richardson's as-applied challenge, though of course I welcome the Court's questions on the facial challenge to the extent it has them. Bruin and Rahimi make clear that the burden rests with the government to demonstrate a sufficiently robust enough historical tradition to justify its modern firearm regulation. To do so, it must point to a historical tradition that shares both a comparable burden and that is comparably justified. The government has failed to meet that burden here. Why doesn't Medina take care of this aspect of the analysis? So Medina is, is both, has been overruled by Bruin and Rahimi and is distinguishable. I'm happy to discuss either of those. It seemed to hold that 922 G-1 is consistent with the history tradition of firearms regulation in this country. So I don't think it did, or certainly did not do so using the test set out in Bruin and Rahimi and thus has been overruled. The challenge brought by the plaintiff in that case was, was this argument that only dangerous felons could be disarmed under 922 G-1. It was an as-applied challenge and the Court erred in several ways and in ways that are fundamentally inconsistent with the reasoning of Bruin and Rahimi and thus mean the decision's been overruled. First and foremost, it erred in placing the burden on the plaintiff to demonstrate. Well, I'd like to understand better why you think that it's inconsistent with Bruin and Rahimi because it did not use a means-ends balancing test, which seems to be the main thing that was definitely overruled by Bruin and Rahimi. And the type of analysis it did seems quite consistent with what Bruin is asking for. So the, I mean, part of what Bruin did certainly was overrule means-ends balancing, but that's not all it did. It made clear that the burden rests with the government to demonstrate that historical burden, and that's repeated again, quite clearly in Rahimi. And in that particular respect, the Court fundamentally erred in Medina by placing the burden on the plaintiff. It talked about the burden on the plaintiff. It talks about how the plaintiff's sources do not compel the conclusion that only dangerous persons can be disarmed, but it was not the plaintiff's burden to cite sources that compel the conclusion. It was the government's burden. So, in that respect, and that's fundamentally core to the Court's reasoning against that wrong. It also mentions sort of the absence of primary sources on point. Again, that is used as evidence in Bruin and Rahimi, particularly Bruin, for the idea that this is not the kind of thing that can justify disarmament. The Court gets that wrong. It relies on the virtuous citizen principle, which was clearly overruled in Rahimi. I mean, it actually even overruled a watered-down version called the responsible citizen test that the government had attempted to invoke. It also relies on this concept that dangerousness is too amorphous, which again is wrong. There are aspects of Medina that, it turns out, are problematic, to be sure. The placement of the burden, the reference to virtuous citizens, but when you look at the decision writ large, it's doing history and tradition. And after the statement about the burden of proof, I mean, it addresses history and tradition and goes through all the tradition of, you know, the tradition is felons can have all their stuff taken away and be executed. So it certainly relies on this death concept, which is probably the only piece of it that I think wasn't overruled or clearly overruled. The problem is that's just a single piece of the Court's overall reasoning and not the only thing it's hanging its hat on. And when we have, I mean, I've cited precedent.  It is important. I mean, the virtuous citizen thing is an afterthought. So, I don't read it as an afterthought, but I would also just note, I mean, if I also think Medina is distinguishable, because it did not consider whether felons whose priors, modern day felons whose priors have no founding year analog would not have been punished with death at the founding, it does not answer the question because the party's never asked it to, there's not part of what was briefed, it never answered the question of whether death can justify this. It's their disarmament and it can't hear that death based set of reasoning actually supports Mr. Richardson's as applied challenge, because his his prior offense carrying a pistol without a license has no founding era analog would not even have been a crime at the founding, much less one punished by death. If you look at as applied, if you look at the circumstances of. Mr. Medina versus Mr. Richardson, I'm not sure that's a very favorable comparison for you. So, I mean, I think it is an analysis this properly confined to Mr. Richard if the question is, you know, is the felony. Kind of more malum and prohibitive regulatory is, is the offense is the person not dangerous or violent. I mean, Medina was less obviously violent than Richardson, at least according to the indictment. So, there's a lot in that and I want to unpack it in a couple of stages. 1st of all, I think Medina's prior felony, which was lying on a mortgage application. He was accused of fraud. People were put to death for fraud at the founding. People were not put to death for carrying a pistol without a license or for anything analogous and the government hasn't claimed that they were on the as applied is the conduct that was charged here. So, if you look at it's not, it's not the world's most serious offense, but the charge. The conduct is very serious, so the conduct surrounding out in a garage in the nightclub guy gets shot. He's involved in that, so a couple of things there. As applied analysis, I mean, the conduct in the parking garage, which repeat our allegations, Mr. Richardson never admitted to them. That conduct is not properly part of an as applied analysis, because it has applied analysis. What disarms Mr. Richardson and why 922 G1 applies to him is because of his prior carrying a pistol without a license convictions. It is not because of that conduct, which to be clear, if the government had thought indeed happened, and it could have proved it was more than welcome to charge. That other information, I mean, he's not disarmed because of any alleged attempted threats assault or anything. That's simply not what 922 G1 is doing and that's a choice Congress made and that's a choice about how Congress wrote that statute. What about the fact that he's on supervised release? So, still serving a sentence for 1 of those, right? So, again, I just don't think that's relevant to analysis under 922 G1 922 G1 references a term of imprisonment. It's not talking about supervised release now. Supervised release would be relevant to your client. And if he's somebody who's on supervised release, it seems that he's the kind of person that could be disarmed. Other circuits have helped. So, so I think we would be in a different world. If this was a supervised revocation proceeding, and we were challenging Mr. Richardson's revocation under supervised release. That's not where we are cases, because I guess there are at least 3 other circuits that have held that. It's constitutionally applied to people who aren't supervised release. So so that's right. And I think those circuits get it wrong. And I would just note 1st of all, that the 3rd circuit, which is 1 of the courts that has been doing this has actually recently taken a case. A couple of cases on bonk and specifically ask them to brief this question of what facts can be considered as applied analysis under 922 G1. So, I think there may well be the time will support your position that this is not properly taken into account. They don't, but I, but I think it follows from asking you, do you do you have any precedent to support your position that you're taking before us that we can't consider the fact that he's on supervised release. So, I think it follows from I mean, I mean, I don't have a case right now, but I think it follows from the Supreme Court's decision in Rahimi and the way it has understood as applied analysis. In other contexts, if you look at the court's decision in Rahimi, I mean, it chronicles a whole bunch of very serious conduct by Mr. Rahimi in the background section of its brief. But when it came time to do the as applied analysis and to be clear, it repeatedly calls it as applied to Mr. Rahimi, it can find itself to what was relevant to the statutes application under 922 G8 and in particular, you know, the finding that would have been made by a judge. And I think that exactly models the proper analysis here. We're not looking at extraneous facts that have nothing to do why Mr. Richardson was disarmed under 922 G1. and similarly, we say a number of and and the brief in support of our case, it's a number of other Supreme Court decisions like, for example, where the court recognized the Supreme Court recognized that someone who. Had burned a flag and caused damage to government property could be prosecuted under a property damage statute that made that property damage relevant, but could not be is what we can consider as applied to him specific to him is the fact that his prior convictions were CPWL. Yes, but we can't consider the fact that he's still serving the sentence of 1 of those CPWL convictions, correct? Because that's not what 922 G1 does. Disarms him based on and I would also just like, that's a fact that's intertwined with us considering that he's been convicted of CPWL respectfully. I don't think so because that's not what's triggered his disarmament under 922 G1 is the fact of the conviction, not the sentence and I, I would separately note it's not clear to me quite frankly, what was going on with the supervised release as we know. I mean, there is indication in the record. He likely was unsupervised release, but there's also this statement in the PSR that Mr. Richardson successfully completed his supervised release. I think that at least raises the question on this record about whether he was on supervised release, or at least whether the terms of his supervised release prevented him from having this firearm. Sorry, why why can't we even consider the fact that he's on supervised release because that's not why challenge because that's not why he's been disarmed under 922 G1. it's just not what has caused him to be disarmed whether or not he was on supervised release is relevant. But the as applied rule that you're advocating is some form of some form of, you know, you look at the facts and circumstances and assess the individual, right? Look to dangerousness, look to criminal conduct. Why would we not consider that? So, the type of test I'm advocating for is 1 that can find that follows the model that the Supreme Court set out and combines it confines itself to what is relevant to 922 G1 application. Just like the Supreme Court can find itself to what was relevant to 922 G8 application. There was a court order. What there was a court order in Rahimi correct? Yes. And here there's a court ordered supervised release. Sure, but that 922 G8 disarmed him based on Mr. Rahimi based on the existence of the court order. That was like, part of what the statute was doing. That is not the supervised release. Did it not provide that he was to remain unarmed for the period? It's not clear to me on this record that I did then what. I still think we prevail because, I mean, that would be entirely relevant to a revocation of supervised release. And if we were in that posture, we're here now, not in supervised release, but not in a revocation proceeding. So, he's under a court assume he's under a court order that prohibits him from having a gun while he's under supervised release. I was that any different than Rahimi for the reasons I said, which is that 922 G8 made that court order relevant and Rahimi that's the statute that Congress wrote. That's simply not what Congress did in 922 G1. It was not. It's not a supervised release. Disarmament statute is still in prison. I mean, I, I can't be guilty of violating a law that had to do with. He's in prison, he manages to obtain a weapon. Which happens from time to time, I, I mean, again, there, I would think 1st of all, that's a different circumstance because at least there. 922 G1 is talking about imprisonment, but I still think then he needs to be prosecuted. It doesn't say imprisonment anymore than it says under a court order. But it just says felony conviction, I'm not sure that's quite right, but setting that aside, I, I mean, I think the way to make that legally relevant is to prosecute whoever it is under a statute prohibiting someone from having firearms in prison. No, 1 saying these can't, you know, that's not a crime. It just needs if the government wants to stand up and argue that. Someone can be disarmed based on these facts that are totally extraneous to the charge that it has brought and the injury that has it has caused it needs to actually charge that conduct. And there are plenty of laws that it could have used here and could have made these types of things relevant, but there's a reason it didn't do. So, in my estimation, it's because it didn't think it could prove that. So, it seems to me that. I thought that an as applied challenge just required us to look at whether. The law is constitutional as applied to this individual. So we would be then allowed to look at the facts and circumstances of this individual. And since this individual is on supervised release, then it's constitutional to disarm him because people who are still serving their sentences. Shouldn't have firearms and then that's consistent with what 3 other circuits have held and it seemed consistent with. Lots of things like public safety concerns, et cetera, you're saying, even if it's true that he shouldn't have a firearm. Under based on his individual circumstances of being on supervised release, even if that's true, I can't consider it. And I shouldn't consider it and to me, that's. That that's that seems very. Technical, and I think what you're asking for is for us to consider the same. Individual in several different, I guess. There would have to be several different. Cases against him, like, we'd have to wait until they move to revoke his supervised release or something in order to consider the fact that he was unsupervised release. Like, how would we able to consider this relevant fact? I think exactly what you said, which is that. They would move to, I mean, they're, they could have charged Mr. Richardson with the assault if they thought he, they could prove he committed assault. They could have charged Mr. Richardson with the Glock switch if they thought that they could prove that he knowingly had. So, even if the facts are in the record and there, and even if he, like, assume for the sake of argument that you concede that the fact that he's unsupervised release would be. An appropriate and constitutional basis to disarm him. We cannot consider that basis unless it's charged. That it that's right. I mean, how I think of an as applied challenge based on things like city of Los Angeles versus Patel, which talks about what it means. That was a facial case, but it talks about what it means for a statute to apply and for its. It's application to be relevant, then you're defining constitutional rights based on charging decisions or a mistake by the government and missing a charging decision. And I don't I don't do you have any precedent for for that kind of highly technical and granular analysis to. Assess the constitutional right based on, I guess. Charging decisions like that, even if the facts are there, I mean, I, I've referenced it already, which is the Supreme Court's decision and they did it that way. Doesn't mean it's required. If they do it that way, in 1 case doesn't mean it's that's a requirement. It's I mean, I think it modeled the appropriate analysis and and I think particularly when you look at some of the other cases, we've cited outside of the 2nd amendment context, like, like men, like grace, like, Illinois. Williams versus Illinois, it illustrates that the government can't justify. It's the constitutionality of a law based on facts that are irrelevant. I mean, it's an as applied test. And so the question is, it's relevant. You're just saying that. Even if it is relevant, we can't consider it if it's not charged. Well, I'm not I'm not conceding. I'm conceding. It's relevant. If you attempted to revoke someone, I'm not at all conceding. It's relevant to 922 G1. I mean, it's decidedly not and under your honor's reasoning. Mr. Richardson, I guess it's relevant to whether he could be constitutionally disarmed, but you're just saying we, we can't consider it. Based on the way this case was litigated, we can't consider it because, I mean, to be clear 922 G1 would always be unconstitutional as applied to Mr. Richardson. What might not be unconstitutional is a revocation of supervised release because that has to do with how supervised releases applied. Oh, sorry, you're losing me. You're losing me here. Take the facts. Take the facts of this case and the government moves to revoke supervised release. Based on Richardson having the firearm and that succeeds and he goes back to prison. Yes, then what then if we had brought a 2nd amendment challenge. And, like, all the facts were established, and I just know the government did not make these arguments and it's briefing below about. It's a challenge, so we've obviously argued waiver and I just, you know, I want to engage with your honors questions, but I just want to put that on the record. I think probably that would be fine. If the government had invoked authority from Congress from statutes that allow supervised release revocation and make that relevant to the application, then I think that would be fine. What if they hadn't moved to revoke his supervised release, but it just isn't in the briefing or wasn't considered because there is a chance that they have they done that? I mean, I would be surprised if they hadn't moved to revoke his supervised release. I don't expect that. They I don't think they have. I mean, the PSR says his probation was completed successfully, but it's not it's not relevant to 922 G1. Wait, I'm sorry. It was completed successfully despite the fact that he got this conviction while he was that's what the PSR says. Which is why it's not clear to me. He was on supervision. I mean, that's a bizarre statement in the PSR. And I just don't know what to make of this record, given that it says his probation was completed successfully probation is different from supervised release. Could you could it be he had 2 prior. Because he could he have completed 1 of them and not and not supervisory. I don't I don't think so. I've seen no indication of that. I don't think they would call supervised release probation. In a PSR would be a totally different thing, right? Well, he was, I believe, I mean, we've been talking about supervised release, but I think the government's I mean, these are both. Like, state charges, I believe. We're only ever talking about probation and we've just maybe a little gap right between the. I think the indictment and the end of his period of supervised release. All right, according to the PSR and 10 days later, I mean, I, right. So, I mean, the most likely scenario is that the probation office didn't know. Right, they've been indicted again. I have no, I don't know, but that's I mean, we don't know, which is why I think resting a fact, but if we do find this court's decision, we do find that there's a prohibition on on arms in the PSR. That's. More relevant, so I just, I just think I take your argument. Yeah, given the confusion here on this record, it would be inappropriate to rest on the supervision. And but I just want to get back to this idea because clearly I've confused everybody and I really don't mean to be confusing 922 G1 disarm someone based on their prior conviction. It has nothing to do with supervised release. So, while someone might be able to be. Like, constitutionally incarcerated, but 922 G. This disarm somebody based on their prior conviction. Merely based on the fact that the length of incarceration is a year or more, it doesn't on its face allow us to get into what was the conviction. But you're saying we can do that and if we can do that, why can't we look at whether he's on supervised release? Because we're looking beyond just. What 922 G says. So, I think, I mean, I think the way to think about it is that Mr. Richardson is disarmed based on this conviction and that, but 922 G doesn't say doesn't distinguish between CPWL or mortgage fraud or anything. It just says. Prior felony, and you're asking us to look beyond that. And why is it that we can look beyond that to see what the felony was, but we can't look beyond it to see the circumstances of this dependent. Like, what's the, I guess, I guess, because of the long standing you want to, I guess, because of the long standing idea that the government can't justify it's. The constitutionality of its regulation by arguing that it could have. Properly written a statute that would have. Been constitutional had it written. I don't understand that. I don't understand what you just said. Okay. I'm that sounds like. An argument lawyers sometimes make in a facial context to. You know, claim the right to a facially constitutional. Rule doesn't sound like. How as applied challenges normally work. As applied challenge, I mean, you got lots of. Lots of cases, you have a statute that. Prohibits a bunch of different things and someone wants to bring an as applied. 1st, amendment challenge, because the charged conduct in the case involves speech and you look at the facts of the case. So, respectfully, I don't agree that that's. I think there's ample precedent for the idea that that. Particularly when you look at is not the way to go about doing conceptually, you're resting on cases like yes. Okay. Okay, thanks. We'll give you some rebuttal. Yeah. Mr. Glasser. Thank you. May it please the court? William Glasser for the United States. The 2nd amendment does not protect Mr. Richardson's possession of a firearm in this case is as applied challenge cannot fail and excuse me, cannot prevail and and his facial challenge that I don't think has been related to here certainly fails under the standard that Supreme Court articulated in Rahimi and this court's decision in Medina. I'd like to start with Medina, because I think that's the most straightforward way for this court to resolve the case. This court applies a fairly strict standard for determining that the Supreme Court has overruled prior precedent. This court said that the Supreme Court decision must clearly dictate a departure from circuit precedent or effectively overrule or eviscerate circuit precedent. Now, it's true as judge cats, as you point out, pointed out that there are some differences in the analysis under Medina in a sort of a post Bruin world. But the Bruin reaffirmed what Medina did, which is to apply historically based analysis. Medina said, quote, to resolve this question. That is the constitutionality of G1. we must look to tradition and history. And that's exactly what Bruin said. Ports must do. So, although there might be areas on the margins where this court would not write Medina in exactly the same way today. Medina is still binding on this court because the Supreme Court hasn't eviscerated that decision. I agree with you on the virtuous citizen part of Medina, but I read all of the history and tradition in Medina flowing from. Or analyzed under the premise that it was Medina's burden of proof to establish relevant tradition that would seem to infect or at least make in incomplete the court's analysis of the history and tradition. I don't think Medina was clear on which party bore the burden. So Medina started out by talking about the historical tradition of executing felons, or at least authorizing the death penalty for felons and only mentioned something that could be construed as burden language in the 2nd paragraph when considering or the sort of 2nd point when considering whether only dangerous persons could be disarmed in there, Medina said, none of the sources cited by Medina compels this conclusion. I mean, I think that this court could easily, while leaving the burden on the government, say that the party without the burden hasn't shown anything to either sort of rebut the government's showing. So, I'm not entirely clear that Medina was speaking in burden language, but I think if you reread Medina with placing the burden on the government, Medina could still come to the same conclusion. So, I don't think you should sort of overread that 1 sentence in Medina as improperly placing the burden on the civil plaintiff there. Or maybe that that was harmless error. Sure, I don't think it affects the bottom line of the decision, Your Honor, and as we've demonstrated in our brief, there are sort of 2 historical traditions that we think support section 922 G1 even in a post-ruin world. Medina primarily relied on the first of those traditions, not the disarming of the dangerous, but rather the fact that... Treatment of felons. That's correct, Your Honor. We think that the dangerousness rationale is just further support that would support this court's decision in Medina. The 9th Circuit, for example, in the Anbon Duarte case relied on both of those traditions to uphold section 922 G1. And I would point out that 6 other circuits have actually just relied on the Supreme Court's statements in cases like Heller that section 922 G1 and similar statutes are presumptively lawful to conclude that Bruin didn't overrule prior circuit precedent. Those courts didn't have anything nearly as strong as Medina, which applied that historical tradition test. But I think even those courts' analysis is persuasive and relevant because those courts concluded that the Supreme Court's statements about felon dispossession statutes were enough to indicate that Bruin was not clearly overruling circuit precedent. You may or may not be right about Medina. Strikes me as a little messy. But the government... Is there some reason why we shouldn't just have a narrow, bright-line rule that the statute is constitutional as applied to individuals on supervised release? Your Honor, we wouldn't have any quarrel. To me, the easiest, unanimous circuits. Sure. Got a pretty aggressive opinion by Judge Hardiman, who has been very protective of the Second Amendment, and he thought this was an easy case in your favor. So, Your Honor, we certainly wouldn't have any quarrel with a narrow ruling like that. I would note, though, that as my colleague here pointed out, the Third Circuit has sua sponte, granted rehearing, en banc in two cases that sort of follow on from Judge Hardiman's decision and more. So those cases are Bost, which is a criminal case, and B-O-S-T, I apologize, I don't have the case number in front of me, but Bost and then Williams versus the Attorney General, which is a civil case. In both of those cases, the Third Circuit granted rehearing sua sponte and asked for briefing on this question of whether you can consider conduct that's not charged or occurs after the underlying conviction. So, although we would be perfectly happy with that rule in this case, I worry that the question would be up in front of this Court again in the next 922G1 case where someone was not on supervision. That's not our problem. Fair enough. Fair enough, Judge Ginsburg. But also, that is at least a matter of dispute within the Third Circuit. It just seems like that is a not insignificant ruling for the government, and we have another Second Amendment case pending in the Supreme Court, which between now and June, we might get more guidance on dangerousness writ large. It just seems like, credentially, that might be the narrow, sensible way for us to deal with this. We would be perfectly happy with a narrow win as opposed to a broad one. I'm not sure that the Supreme Court in the Hamani case is going to resolve a lot of questions that relate to 922G1, but as you mentioned, perhaps their discussion of dangerousness in the 922G3 context would shed some light on the other rationale, not the one that Medina primarily relied upon. I'm happy to answer any further questions if the Court has them. If I can just briefly touch on some of the questions about the underlying facts of this case, the question about whether or not Mr. Richardson was on probation or supervision at the time of his offense, I think it's undisputed. The undisputed facts in the PSR indicate that he was on supervision. His supervision term expired 10 days later. I think it was – the PSR uses the term supervision and supervisory probation. I think because this was in superior court, it was not federal supervised release. It was superior court supervision. But it's clear that he was on some form of supervision. It's strange that it was – the PSR says that he successfully completed it, but it's not disputed that he was on supervision. And regarding the question of whether he was prohibited from possessing firearms while on probation, I pulled the superior court record, which I think this court could judicially notice if it chose to, and found that although he was not specifically prohibited from possessing a firearm, he was ordered to, quote, obey all laws, ordinances, and regulations. And so his possession of a firearm would violate federal law under 922 G1. It would violate D.C. code because he's once again for a third time carrying a pistol without a license. So should this court choose to rely on that sort of narrower ground to uphold the statute's application, I think there would be ample evidence in the record and judicially noticeable evidence to do so. And what's your response to your friend on the other side's assertion that we can't consider things like supervised release, even if that's true? Sure. Your Honor, the government's view is that the way to think about an as-applied challenge is that when you have a law that is facially valid and presumptively lawful, as the Supreme Court has said, then it's really – the defendant has to – and this is consistent with Medina, too. The defendant has to do something to take himself out of the sort of mine run of applications where the law is constitutional and show that he's somehow different from those other people. He needs to show that he's different from Medina, who engaged in mortgage fraud. And this court concluded that that 20-, 25-year-old mortgage fraud conviction was enough to disarm him. And in order to do that, it seems like it's perfectly fair to consider not just the bare allegations in the indictment, which the allegation was simply that he was convicted of a crime punishable for a term exceeding one year, and consider the defense once you get to consider the nature of those underlying charges, which is, I think, as you pointed out, an inconsistency in their view. But the government's view is that once you are trying to demonstrate that you don't fall within that sort of – within the group of people to which a statute can be constitutionally applied, you have to show that based on your specific circumstances. And the government then can come back with additional specific circumstances to say, no, this is a perfectly constitutional application to this person. Do you have any case law or authorities that support this view, which makes a lot of sense to me? So, Your Honor, we do have the decisions from the Third and the Fifth Circuit. The Sixth Circuit says that it's really totally an anything-goes analysis. In the Williams case, we've cited these in our brief, the Williams case from Sixth Circuit, Diaz from the Fifth Circuit, and the Moore case, which, again, maybe has had some doubt cast on it in the Third Circuit. Beyond that, I do think that if you read the Supreme Court decisions that the defense relies on, such as Patel, they're misunderstanding what those decisions said. So, Patel dealt with a law that allowed the city to engage in warrantless searches, and the government of the city responded in defense of that law. But, well, you can think of at least some valid applications of this warrantless search statute because maybe there was consent. And the Supreme Court said, well, if there's consent, you don't even apply the warrantless search statute. So, there's just no application. The law has no work to do. In this case, it's very different because here, Section 922G1 clearly has work to do. It applies to someone who has been convicted of a crime punishable by a term exceeding one year. The question is just whether there are some additional facts beyond those elements that might show that it was constitutional or unconstitutional as applied to someone. So, Patel suggests that if a defendant came in and said, this is not constitutional as applied to me, the government could say, but you consented. And so, therefore, it is constitutional as applied to you. No, Your Honor. That's not what Patel said. Patel said that if, in the context of a warrantless search statute, that the government can't defeat a facial challenge by hypothesizing non-applications of the statute. So, if I were here saying, well, Section 922G1 is constitutional. Connected to the question before us, which is can we consider things beyond what? Yeah. Patel didn't resolve that one way or another, Your Honor. Okay. Patel is a facial challenge. That's correct. It's facial challenge law. It's about how to apply Salerno and what the relevant denominator is for all possible applications. That's correct. I thought. No, that's absolutely correct. And the reason that Patel doesn't support Mr. Richardson's argument here is that Patel, contrary to what Mr. Richardson argues, Patel doesn't say that a statute like 922G1 has no application in this context. It clearly has application in this context. What Patel simply said is you can't hypothesize non-applications of a statute in order to defeat a facial challenge. Here, in order to defeat the facial challenge Mr. Richardson raises, we're not raising non-applications of a statute. For example, an application of this statute as applied to someone with a murder conviction, that's an application of the statute. And we're saying that's clearly constitutional. He can't win on a facial challenge. So, that was my only point with respect to Patel. Just for a second, back to your exchange with Judge Pan about how as applied challenges work. You said that the defendant statute that is facially constitutional, no problem applying this statute to murder predicates. The defendant, the challenger in an as-applied challenge has to do something to take himself out of the heartland of the statute. And that seems right to me in general. But is there any tension with the instruction in Bruin that the government bears the burden of proving the relevant tradition with sufficient specificity? So, like, they do that writ large for felons and that establishes facial constitutionality. And then you have an edge case with the conviction for opening the ketchup bottle or whatever. Some weird felony. You said it's the challenger has to do something to take him out of the heartland. Sure. Why isn't it the government's burden to show that the general tradition extends to that kind of conduct in the case? Well, Your Honor, I'm sort of going beyond what the Supreme Court has clearly addressed. But here's how I would think about it. And these are admittedly complicated issues. The way I would think about it is the government's top line view that's consistent with Medina is that we have shown that Section 922G1 is constitutional in all its applications. To the extent there are questionable problematic cases, Congress dealt with that in 925C, which the department has recently revived. And so you don't need there's certain... What's 925C? I'm sorry, Your Honor. Section 925C, we cite this in our brief, is a statute that Congress passed that says that someone can regain their right to possess firearms if they can show they're not a danger to the community. So that... Petitioning the Attorney General, isn't it? That's correct. Petitioning the Attorney General. So that's our sort of top line view. So let's assume we're wrong. Suppose I think you've proven constitutionality for the Heartland application, but I'm worried about these EDGE cases.  In that situation, Your Honor, I think the best way to think about it would be to say that the defendant needs to come forward with something to show that he falls outside the Heartland. It would be very odd if the government had the burden of digging up every possible fact about, you know, the age of the defendant's criminal history or his rehabilitation, that sort of thing. Again, I could be wrong on that, and if the government does bear the burden even there, I think we could satisfy it in Mr. Richardson's case. But I think the defendant would need to come forward, at least make an allegation and a motion to dismiss an indictment saying, you know, this can't be constitutionally applied to me because of X. And then I think the government would have the burden of showing, no. It's a burden of production or articulation, and then you show that the tradition applies with sufficient clarity. That's correct, Your Honor. So I think probably the best way to understand the Supreme Court's decision in Bruin is that the government bears the burden of persuasion on the constitutional question. At the first level, you know, in sort of the general applications, and then when facing an as-applied challenge, can respond to the defendant's challenge. And our view is that when we're responding to that challenge, we can point to things outside of the bare elements of the offense because that's exactly what the defense is doing in that situation. That makes sense. Okay. Judge Pan, anything else? Judge Ginsburg? Thank you. We would ask the Court to affirm. Thank you. Ms. Millian, we'll give you three minutes. Thank you, Your Honors. Really quick to start, I actually have the case number for the Third Circuit case where they granted en banc. So in Boost, it is 24-17-19, and that cites the civil case where they granted en banc review as well in that en banc order, and that'll have the case number for that case for you. I'm sorry. One is 24-17-19. Unfortunately, I don't have the case number for the other one. What's the pointer? We'll find it in Boost? Yes, exactly. Got it. So Your Honor asked some questions about whether the burden makes a difference in the Medina decision, and I just want to quickly dwell on that for a minute because I think it makes a huge difference in why the Court came out the way it did. It specifically noted that there were few primary sources directly on point. It noted the absence of founding-era regulations disarming individuals for past convictions, and it used language like on balance to describe the way it was coming out in that case, indicating that it found the issue to be in relative equitable ways. And so the fact that it seemed to understand the burden to rest with the plaintiff is what drove its decision. That was the main point I wanted to make, but I welcome any additional questions you all have. Mr. Payne, anything? I just, I know it's not entirely clear in Medina, but I just remember seeing that it, them noting that it was the government's burden, at least to the extent of proving that the defendant was dangerous. I just don't think it was very clear that they were assigning the burden to the defendant. Let me, if you don't mind, let me grab a copy of it.  So I'm not sure what you're referring to, Your Honor, but I mean, the points that I mentioned before, I think, demonstrate the importance of the burden. The ruling specifically notes that none of the sources cited by Medina compels the conclusion that only dangerous people can be disarmed, which, of course, was the context of his as-implied challenge. He'd argued that only dangerous felons could be disarmed, and it says things like to the extent it may be possible for a felon to show that his crime was so minor or regulatory that he did not forfeit his right to arms by commuting it. Medina has not done so. Again, that's evidence that the court is placing the burden on Medina to prove that this, a particular historical tradition, permits him to carry his firearm rather than the reverse. Okay, thank you. Judge Ginsburg? Okay, thank you, counsel. Thanks to both counsel for really exceptionally good briefing and advocacy. We appreciate it. The case is submitted. Thank you.
judges: Katsas; Pan; Ginsburg